[Cite as *Herron v. Herron*, 2021-Ohio-2223.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

JOSHUA M. HERRON

 Appellant

 v.

CANDY M. HERRON

 Appellee

C.A. No.  29683

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.  DR-2014-09-2539

DECISION AND JOURNAL ENTRY

Dated: June 30, 2021

---

CALLAHAN, Judge.

{¶1} Appellant, Joshua Herron ("Father"), appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. For the reasons set forth below, this Court affirms.

I.

{¶2} Joshua and Candy Herron ("Mother") divorced in November 2015. They are the parents of one child, E.H., who was a minor at the time of the divorce. The divorce decree adopted their separation agreement and shared parenting plan, which provided for joint legal custody, both parents to be the residential parent, and equal parenting time. It was agreed that E.H. would be enrolled at Summit Christian Academy and Father would pay all tuition and costs associated with attending that school. Additionally, the parents agreed Mother would provide health insurance for E.H. and E.H.'s health care providers would remain the same unless a change in the hospitalization coverage required use of other medical providers. As for child support, the shared parenting plan

deviated the child support amount to zero because of the parties' similarity in income, the equalization of parenting time, and the monetary responsibility of each parent for costs associated with parenting.

{¶3}    Eight months later, Father sought to terminate the shared parenting plan and to be awarded sole custody, while Mother requested a modification of the shared parenting plan. Prior to the hearing, Mother and Father agreed to a consent entry that changed the parenting time to an alternating week schedule, named Father the primary health insurance provider and Mother secondary, altered the procedure for claiming the tax dependency credit, and identified each parent's childcare providers.

{¶4}    Less than four months after the consent entry, Mother moved to terminate the original and modified shared parenting plans and requested to be designated the sole residential parent and medical decision maker of E.H. Likewise, Father filed a motion to modify the shared parenting plan, requesting that he be designated either the residential parent for school purposes or the sole residential parent. Mother filed a second motion seeking to modify the parenting time schedule and child support. Following an evidentiary hearing, the magistrate issued a decision that ordered Father to have standard parenting time pursuant to the trial court's standard order, designated Mother as the residential parent for school purposes, authorized Mother as the parent to select health care providers, made Mother's health insurance primary and Father's secondary, ordered Father to pay child support, and granted Mother the tax dependency exemption. The trial court adopted the magistrate's decision and entered judgment the same day. Father filed objections and supplemental objections to the magistrate's decision, which were all overruled.

{¶5}    Father appealed the trial court's decision overruling his objections. *See Herron v. Herron*, 9th Dist. Summit No. 29264, 2019-Ohio-5095, ¶ 3. With respect to Father's challenge to

the trial court's modification of the parties' parenting time, this Court concluded that the trial court failed to comply with R.C. 3109.04(E)(1)(a) and remanded the matter to the trial court. *Id*. at ¶ 8, 11. Additionally, we deemed the trial court's other determinations related to child support and the designations of the residential parent for school purposes and the parent to select medical providers were intertwined with the decision to reduce Father's parenting time, and thereby required the trial court to re-determine those issues after it reconsidered the issue of parenting time. *Id*. at ¶ 10. Accordingly, this Court sustained all of Father's assignments of error, vacated the judgment, and remanded the matter to the trial court. *Id*. at ¶ 11.

{¶6} Upon remand, the trial court applied R.C. 3109.04 and entered a new judgment reaching the same conclusions as before. Father appeals the trial court's judgment, raising five assignments of error for our review. For ease of analysis, this Court rearranges the assignments of error.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY MODIFYING FATHER'S COMPANIONSHIP SCHEDULE FROM EQUAL TIME WITH THE MINOR CHILD TO THE TRIAL COURT'S STANDARD ORDER OF COMPANIONSHIP.

{¶7} In his first assignment of error, Father argues that the trial court abused its discretion when it modified the agreed upon equal parenting time schedule to the trial court's standard order of parenting time. We disagree.

{¶8} This Court generally reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, 9th Dist. Summit No. 24150, 2008-Ohio-5232, ¶ 9. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-

3139, ¶ 18. "Trial courts are generally afforded broad discretion in determining whether a modification of parenting rights and responsibilities is necessary." *Bohannon v. Bohannon*, 9th Dist. Summit No. 29320, 2020-Ohio-1255, ¶ 26. A trial court's decision modifying the parties' parenting time in a shared parenting plan is reviewed for an abuse of discretion. *See McDonald v. McDonald*, 9th Dist. Lorain No. 13CA010341, 2014-Ohio-2861, ¶ 5-6. An abuse of discretion is present when a trial court's decision "'is contrary to law, unreasonable, not supported by evidence, or grossly unsound.'" *Menke v. Menke*, 9th Dist. Summit No. 27330, 2015-Ohio-2507, ¶ 8, quoting *Tretola v. Tretola*, 3d Dist. Logan No. 8-14-24, 2015-Ohio-1999, ¶ 25.

{¶9} This Court has held that a motion to modify parenting time under a shared parenting plan is reviewed under R.C. 3109.04(E)(1)(a) because the motion seeks to reallocate the parental rights and responsibilities set forth in a prior decree. *See Herron*, 2019-Ohio-5095, at ¶ 4, quoting *Gunderman v. Gunderman*, 9th Dist. Medina No. 08CA0067-M, 2009-Ohio-3787, ¶ 23. To reallocate parental rights in accordance with R.C. 3109.04(E)(1)(a), the trial court must find (1) that there has been a change in the circumstances of the child, the residential parent, or either parent, (2) that the modification is in the child's best interest, and (3) that one of the three provisions in R.C. 3109.04(E)(1)(a)(i)-(iii) applies. *See Gunderman* at ¶ 9, quoting R.C. 3109.04(E)(1)(a)(i)-(iii) and citing *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, syllabus. The provision applicable in this matter is R.C. 3109.04(E)(1)(a)(iii), which states that "[t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

{¶10} The court shall consider the relevant factors listed in R.C. 3109.04(F)(1) when determining whether a modification of a decree allocating parental rights, such as parenting time, is in the best interest of a child. *See Herron* at ¶ 6; *Kannan v. Kay*, 9th Dist. Summit No. 26022,

2012-Ohio-2478, ¶ 18. Those factors include (a) the wishes of the parents for the care of the child; (b) the wishes and concerns expressed by the child to the court; (c) the child's interaction and interrelationship with the parents and any others who might significantly affect the best interest of the child; (d) the child's adjustment to home, school, and community; (e) the mental and physical health of all involved; (f) the parent more likely to honor parenting time right or visitation and companionship rights approved by the court; (g) whether a parent has failed to make child support payments; (h) whether a parent or member of the parent's household has a criminal conviction as outlined in subsection (h); (i) whether either parent has continuously and willfully denied the other parenting time in accordance with a court order; and (j) whether either parent has or plans to establish a residence outside the state. R.C. 3109.04(F)(1)(a)-(j). A trial court is also permitted to consider other relevant factors not listed in R.C. 3109.04(F)(1) in making its decision as to the best interest of the child. *See* R.C. 3109.04(F)(1); *Loewen v. Newsome*, 9th Dist. Summit No. 28107, 2018-Ohio-73, ¶ 47.

{¶11} Father argues that the trial court failed to determine whether there had been a change in circumstances. In the prior appeal, Father made the same argument and this Court concluded that he had forfeited the argument and he did not argue plain error. *Herron* at ¶ 5. The law of the case doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). Based upon our decision in the prior appeal, Father's argument regarding the trial court's failure to conduct a change in circumstances analysis is precluded by the law of the case doctrine. *See id.* at 3-4 ("[T]he decision of an appellate court in a prior appeal will ordinarily be followed in a later appeal in the same case and court.").

{¶12} As to the best interest factors, Father argues that "the facts relied upon [by the trial court] were inadequate to justify altering the companionship schedule[]" and the trial court "provided a limited factual basis for [its] conclusions." Father first claims that the trial court disregarded his testimony that he notified Mother between August and September 2017 that E.H.'s medical providers had to change due to the change in insurance coverage pursuant to the June 28, 2017 consent entry and instead "took Mother's testimony at face value." However, Father fails to cite to the record and to identify Mother's testimony that the trial court accepted at face value. *See* App.R. 16(A)(7).

{¶13} Father's argument suggests that there was conflicting testimony on this point. Mother testified that she was first told by Father of the changes to the medical providers in August 2017. Additionally, Mother's Exhibits C and D contained messages exchanged through Family Wizard between Mother and Father dated August 21, 2017 and September 5, 2017 regarding the change in E.H.'s pediatrician and counselor because of the change in insurance coverage. Mother's testimony and evidence are consistent with Father's testimony. Thus, the trial court did not ignore Father's testimony. Father's argument is not well-taken.

{¶14} Next, Father alleges that the trial court disregarded Mother's testimony regarding her failure to communicate and only considered testimony regarding Father's failure to communicate. Father specifically identifies Mother's testimony regarding her various boyfriends, E.H. spending the night at Mother's boyfriend's residence, and E.H. witnessing an act of domestic violence committed by a boyfriend against Mother, and argues that Mother was required to disclose these facts to him pursuant to the shared parenting plan. Because Mother did not disclose these facts to him, Father argues Mother failed to communicate and violated the shared parenting

plan. Furthermore, Father argues that the trial court failed to read the shared parenting plan and to understand what constituted a failure to communicate.

{¶15} Civ.R. 53(D)(3)(b)(iv) provides that, except for a claim of plain error, a party forfeits the right to assign error on appeal with respect to the trial court's adoption of any factual finding or legal conclusion "unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Such objections must be specific and all grounds must be stated with particularity. Civ.R. 53(D)(3)(b)(ii). "Where a party fails to raise an issue in its objections to a magistrate's decision, that issue is forfeited on appeal." *Bass-Fineberg Leasing, Inc. v. Modern Auto Sales, Inc.*, 9th Dist. Medina No. 13CA0098-M, 2015-Ohio-46, ¶ 24, citing *Walters v. Walters*, 9th Dist. Medina No. 12CA0017-M, 2013-Ohio-636, ¶ 15.

{¶16} In his objections to the magistrate's decision, Father references the failure to consider Mother's "behavior." The objections, however, did not identify the "behavior" that the magistrate "ignore[d]." In his supplemental objections, Father recounted Mother's testimony related to her boyfriends and the incident of domestic violence, but he did not present any argument that this was the "behavior" "ignore[d]" by the magistrate, or the relevance of this testimony to his objections. Furthermore, Father did not argue in his objections that this testimony was evidence of Mother failing to communicate with Father and was a violation of the shared parenting plan. Nor did Father raise an objection that the magistrate failed to read the shared parenting plan and to understand what constituted a failure to communicate. Each of these arguments on appeal are beyond the scope of the objections Father raised to the magistrate's decision and thereby are forfeited. *See John Soliday Fin. Group, LLC v. Robart*, 9th Dist. Summit No. 24407, 2009-Ohio-2459, ¶ 9-15. *See also Bass-Fineberg Leasing, Inc.* at ¶ 25-26. Moreover, Father has not alleged plain error and we decline to undertake such an analysis on his behalf. *See Bass-Fineberg Leasing,*

*Inc.* at ¶ 24, quoting *McMaster v. Akron Health Dept., Housing Div.*, 189 Ohio App.3d 222, 2010-Ohio-3851, ¶ 20 (9th Dist.).

{¶17} Father also argues that the trial court should not have considered the allegations of the molestation of E.H. in its best interest determination because the allegations arose less than a week before the hearing and the trial court did not have adequate information regarding the effect of the abuse on E.H. Father acknowledges in his brief that the magistrate made a factual finding that E.H. was molested by her paternal grandfather. Father, however, did not object to this factual finding and thus has forfeited his argument that the trial court erred in considering the molestation of E.H. in its best interest determination. *See Quintile v. Quintile*, 9th Dist. Medina No. 08CA0015-M, 2008-Ohio-5657, ¶ 15. Moreover, Father has not alleged plain error. *See Bass-Fineberg Leasing, Inc.* at ¶ 24, quoting *McMaster* at ¶ 20.

{¶18} Additionally, Father speculates that it "seem[s]" that the trial court used the molestation finding against him to change his parenting time. Father concedes that the trial court did not specifically make such a statement. While Father generally cites to the magistrate's decision and the trial court's judgment entry, he fails to identify what statements in those filings support his position. *See* App.R. 16(A)(7). Nor does Father develop an argument to support his belief in this regard and this Court cannot construct one on his behalf. *See id.*; *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

{¶19} Related to the issue of blame, Father claims that the parties had an agreement that neither was to blame for the molestation. Father, however, acknowledges that this agreement is not in the transcript. Nor did the parties file a written stipulation as to this issue. This Court's review is limited to the record before us. *See* App.R. 9. *See also* App.R. 12(A)(1)(b). "Matters outside the record cannot be used to demonstrate error, nor can they be considered in defense of a

judgment." *See In re J.C.*, 186 Ohio App.3d 243, 2010-Ohio-637, ¶ 15 (9th Dist.). As the parties' alleged agreement is not a part of the record, this Court cannot consider whether this purported agreement occurred. *See State v. Latham*, 9th Dist. Medina No. 07CA0067-M, 2008-Ohio-3050, ¶ 71, fn. 1.

{¶20} Father also alleges that the trial court focused only on the relationship between the parents rather than the relationship between each parent and E.H. Similar to the other arguments in Father's first assignment of error, Father failed to raise this argument in his objections and has forfeited it on appeal. *See Bass-Fineberg Leasing, Inc.*, 2015-Ohio-46, at ¶ 24. Moreover, Father has not alleged plain error. *See id.*, quoting *McMaster*, 189 Ohio App.3d 222, 2010-Ohio-3851, at ¶ 20.

{¶21} Lastly, Father claims that there was a "lack of an appropriate analysis" because the trial court's analysis of the best interest factors was shorter than the analysis in his appellate brief. Father provides no legal authority to support his contention regarding the length of the trial court's analysis. *See* App.R. 16(A)(7). Moreover, in the prior appeal we explained that the trial court is required to consider the statutory factors, but it "does not have to 'explicitly reiterate its findings with regard to [each] factor' under Section 3019.04(F)(1)[.]" (Alteration in original.) *Herron*, 2019-Ohio-5095, at ¶ 8, quoting *Matis v. Matis*, 9th Dist. Medina No. 04CA0025-M, 2005-Ohio-72, ¶ 6. Rather, "'it must be apparent from the record that the trial court considered the best interest factors in its decision.'" *Herron* at ¶ 8, quoting *Phillips v. Phillips*, 9th Dist. Lorain No. 13CA010358, 2014-Ohio-248, ¶ 8. The trial court's current judgment entry not only states that it considered the statutory factors regarding the best interest of the child, but it also cited the relevant statutory factor and provided a brief statement related to the statutory factor. *Compare Bentley v.*

*Rojas*, 9th Dist. Lorain No. 10CA009776, 2010-Ohio-6243, ¶ 22. Father's challenge to the depth of the trial court's analysis regarding the best interest of E.H. is not well-taken.

{¶22} Upon review, Father has not shown that the trial court abused its discretion when it modified his parenting time. The record reflects that the trial court applied R.C. 3109.04(E)(1)(a), considered the best interest factors, and fashioned its determinations with those interests in mind. Accordingly, we cannot say that the trial court abused its discretion when it modified Father's parenting time to the standard parenting time schedule. Father's first assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 5

THE COURT'S DECISION DRASTICALLY MODIFYING FATHER'S PARENTING TIME WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶23} In his fifth assignment of error, Father argues that the trial court's decision modifying the parenting time was against the manifest weight of the evidence and contrary to the best interest of E.H. We disagree.

{¶24} While the trial court's decision as to the allocation of parental rights will not be reversed absent an abuse of discretion, this Court applies the manifest weight of the evidence standard to review the trial court's factual findings. *Zaccardelli v. Zaccardelli*, 9th Dist. Summit No. 26262, 2013-Ohio-1878, ¶ 37. When reviewing the manifest weight of the evidence, this Court

"'"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."'"

(Alterations made in *Tewarson*.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse." *Boreman v. Boreman*, 9th Dist. Wayne No. 01CA0034, 2002-Ohio-2320, ¶ 10, citing *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Manifest weight of the evidence pertains to the burden of persuasion. *Eastley* at ¶ 19. When undertaking this review, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶25} Father challenges the trial court's factual findings in support of its best interest determination. In order to make a determination of whether the modification of parental rights and responsibilities is in the best interest of the child, the trial court must consider the non-exclusive list of relevant factors set forth in R.C. 3109.04(F)(1). *Herron*, 2019-Ohio-5095, at ¶ 6. In this matter, the trial court expressly considered the wishes of both parents, E.H.'s interactions with her paternal grandfather and stepmother, the fact that E.H. is well-adjusted in her school and Mother's home, that Mother is more likely to facilitate parenting time, Father's failure to inform Mother that he changed E.H.'s health care providers, Father's regular use of paternal grandfather as a childcare provider, and paternal grandfather's conviction. *See* R.C. 3109.04(F)(1)(a), (c), (d), (f), and (h). Father disputes the trial court's factual findings on some, but not all, of the above relevant factors. We will limit our review to those factors Father challenges.[1]

---

[1] Additionally, we will limit our consideration to those arguments specifically set forth in Mother's response to Father's fifth assignment of error. Mother's incorporation of her arguments from the first assignment of error into this assignment of error fails to comply with the requirements of App.R. 16(A)(7). *See State ex rel. Midview Loc. School Dist. Bd. of Edn. v. Ohio*

**Guardian ad litem's recommendation**

{¶26} As an initial matter, Father suggests that the trial court failed to follow the guardian ad litem's recommendation to maintain the equal parenting time. Father contends that the trial court did not reference the guardian ad litem's recommendation and it is unclear if the trial court considered the recommendation and why the trial court chose to disregard the recommendation.

{¶27} "'[A]bsent an indication in the record to the contrary, a reviewing court will presume that the trial court properly considered the evidence before it.'" *In re A.C. and L.C.*, 9th Dist. Summit No. 23627, 2007-Ohio-5525, ¶ 28, quoting *Whitson v. Whitson*, 2d Dist. Miami No. 91-CA-62, 1992 WL 211938, *3 (Sept. 4, 1992). While the trial court's judgment entry does not reference the guardian ad litem's recommendation, that does not mean that the trial court failed to consider that evidence. *See In re A.C. and L.C.* at ¶ 28. The trial court is not required to "explicitly detail every item of evidence that it considered in reaching its decision, nor would it be practical for it to do so." *Id.*

{¶28} Furthermore, the guardian ad litem's recommendations are for the trial court to consider when it determines the best interest of the child. *Ankney v. Bonos*, 9th Dist. Summit No. 23178, 2006-Ohio-6009, ¶ 23, *overruled on other grounds by Gunderman*, 2009-Ohio-3787, at ¶ 13. The trial court, however, is not obligated to follow those recommendations. *Ankney* at ¶ 23. Accordingly, it is not error for the trial court to make an order different than the guardian ad litem's recommendations. *Id.*

---

*School Facilities Comm.*, 9th Dist. Lorain No. 16CA010991, 2017-Ohio-6928, ¶ 29; *Vogel v. Northeast Ohio Media Group LLC*, 9th Dist. Medina No. 19CA0003-M, 2020-Ohio-854, ¶ 16.

**Relationships with family members (R.C. 3109.04(F)(1)(c))**

{¶29} The trial court found that paternal grandfather had molested E.H. and that Father's wife had interfered with E.H.'s relationship with Mother. Father argues there is no evidence to support either of these factual findings.

**Paternal Grandfather**

{¶30} Mother testified that E.H. disclosed to her on June 4, 2018 that paternal grandfather had touched her sexually. Mother shared this information with Father and reported the same to the police and E.H.'s counselor. The emails exchanged between Mother and Father between June 4 - 7, 2018, through Family Wizard corroborate Mother's testimony. Additionally, the stipulated counseling records of E.H. contain a counseling session entry dated June 4, 2018 indicating that E.H. told the counselor about paternal grandfather touching her sexually.

{¶31} There is also testimony from Mother and Father reflecting their present belief that E.H. had been molested by paternal grandfather. In reference to the sexual abuse, Mother testified that she did not know whether Father knew "something had been going on" but she "wouldn't believe that [Father] would allow that situation[.]" During the line of questioning regarding E.H.'s disclosure of the molestation by paternal grandfather, Father was asked "obviously something traumatic happened to her daughter, your daughter?" and he answered "Yes."

{¶32} Father disputes the factual finding regarding molestation, claiming that at the time of the hearing there "was merely an allegation" of molestation and paternal grandfather "had not yet been charged with any crime." Both of Father's arguments are misplaced. The record contains not only testimony and evidence regarding the initial disclosure of molestation, but also testimony from Mother and Father reflecting their beliefs that E.H. was molested by paternal grandfather. Their testimony did not dispute or question that E.H. was molested. Additionally, there is no

evidence or testimony in the record to support Father's statement that charges had not yet been filed against paternal grandfather. Rather, the record is silent as to that fact. While there is no evidence regarding whether charges were filed, there is testimony regarding the parents' belief that E.H. was molested by paternal grandfather to support the trial court's factual finding.

{¶33} Related to the molestation finding, Father also argues that the record reflects that both he and Mother used "paternal grandfather as a primary childcare provider" for E.H., but the molestation finding is "seemingly" used to reduce his parenting time. To the extent Father is challenging the trial court's factual finding regarding Father permitting paternal grandfather to babysit E.H., Father's argument is misplaced because the trial court did not make that factual finding in relation to this statutory factor.[2]

**Stepmother**

{¶34} Father argues that there was no evidence that stepmother interfered with the relationship between E.H. and Mother. Father contends that the testimony reflects that E.H. received love from all three adults in her life. Although there is testimony from one of E.H.'s teachers that E.H. received "a lot of love" from Mother, Father, and stepmother, that testimony does not contradict, or support the trial court's factual finding regarding stepmother's interference in E.H. and Mother's relationship. Similarly, Mother's argument in support of this factual finding that stepmother allegedly sent her flowers from an anonymous male to cause problems in Mother's relationship with her boyfriend is not relevant to whether stepmother interfered with the relationship between E.H. and Mother.

---

[2] The trial court made this factual finding in relation to R.C. 3109.04(F)(1)(h) and Father reasserts this argument as it pertains to R.C. 3109.04(F)(1)(h). We will address Father's argument under the proper statutory factor.

{¶35} Evidence relevant to this factual finding is Mother's testimony that there was "negative talk about mommy" being said to E.H. by stepmother. The stipulated counseling records corroborate Mother's testimony. The counseling note from the March 12, 2018 session indicates that the counselor spent thirty minutes alone with E.H. This counseling note contains two lists: one with a happy face and one with a sad face. Under the sad face it states "when tonton[3] says my mom's a bad mom – feel sad[.]" Further, the counseling notes from the initial intake with Mother and E.H. on March 8, 2018 state "Stepmom says negative things about Mom[.]" The evidence as recited above supports the trial court's factual finding that stepmother interfered with the relationship between E.H. and Mother.

## Adjustment to home (R.C. 3109.04(F)(1)(d))

{¶36} The trial court found that E.H. was well-adjusted to Mother's home. Father does not contest E.H.'s adjustment to Mother's home. Rather, Father suggests that the trial court failed to consider E.H.'s adjustment to his home and notes that there was no evidence to support that E.H. was not well-adjusted to his home.

{¶37} The guardian ad litem testified that it was her recommendation to maintain the equal parenting time schedule. Other evidence at the hearing suggesting that E.H. is adjusted to Father's home is the counseling note from the March 12, 2018 session with E.H. which lists being with Mother, Father, and stepmother under a drawing of a happy face. The fact that the trial court did not reference E.H.'s adjustment to Father's home does not mean that the trial court overlooked that fact or failed to consider the evidence. *See Giovanini v. Bailey*, 9th Dist. Summit Nos. 28631, 28676, 2018-Ohio-369, ¶ 15; *In re A.C. and L.C.*, 2007-Ohio-5525, at ¶ 28.

---

[3] This is Stepmother.

**{¶38}** There is testimony and evidence suggesting that E.H. was adjusted to both parents' homes. "In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings." *Lundin v. Niepsuj*, 9th Dist. Summit No. 26015, 2014-Ohio-1212, ¶ 12, citing *Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, at ¶ 21.

### Facilitation of court-approved parenting time (R.C. 3109.04(F)(1)(f))

**{¶39}** The trial court determined that Mother was more likely to facilitate parenting time based upon "Father's actions in scheduling his vacation time with the child so as to substantially reduce Mother's time with the child." Mother testified that on April 25, 2018, Father scheduled his summer vacation time with E.H. to occur during two of Mother's regularly scheduled weeks for parenting time. Additionally, Father scheduled another period of vacation which encroached upon two days of Mother's parenting time.

**{¶40}** Mother testified that she sent three messages through Family Wizard to Father regarding his vacation plans conflicting with her parenting time. First, Mother offered to switch her parenting weeks with Father so that his vacation time would occur during his normal parenting time. Mother's second message asked Father to makeup the two days that his other vacation week overlapped into her parenting time. Mother's last email indicated she was unable to trade weeks with Father in June because it was now too late for her to change her work schedule and she suggested that they schedule their vacations on their scheduled parenting weeks. Father did not respond to any of these messages. Mother contacted her attorney to address this issue. Thereafter, Father canceled two of his vacation weeks and shortened his other vacation request by two days. Mother's testimony is corroborated by the messages sent through Family Wizard. Mother further testified that she did not retaliate by scheduling her vacation time during Father's parenting time.

{¶41} Father argues that the trial court's factual finding is wrong because he canceled his vacation requests and Mother's parenting time was "not negatively impacted." While Mother did not experience an actual reduction in parenting time, there is testimony and evidence before the trial court that Father scheduled his vacation time during Mother's normal parenting time and he did not respond to Mother's requests to resolve the scheduling conflicts in order to maintain the court-ordered equal parenting time. Thus, the trial court had before it evidence of Father not facilitating court-approved parenting time.

{¶42} Father also suggests that the trial court's factual finding is inconsistent with his testimony "that Mother had denied him parenting time[]" in the past. There was no direct testimony that Mother denied Father parenting time, only an inference. During cross-examination regarding Father's efforts to facilitate telephone calls between E.H. and Mother during his three-week spring break parenting time, Father was asked if he had "gone three straight weeks without seeing [E.H.,]" to which he replied "Yes." There was no further testimony establishing the reason why Father did not see E.H. for three weeks. Father's testimony in this regard was open to various inferences, i.e., the three-week period was provided for in the equal parenting time order similar to his three-week spring break parenting time or it was due to Mother denying him his parenting time.

{¶43} When "'the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment.'" *Tewarson*, 141 Ohio App.3d at 115 quoting *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988). *See Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978). "'Every reasonable

presumption must be made in favor of the judgment and the findings of facts [of the trial court].'" (Alteration in original). *Tewarson* at 115, quoting *Karches at* 19.

### Conviction of a household member and reason to believe parent acted in a manner resulting in a child being an abused child (R.C. 3109.04(F)(1)(h))

**{¶44}** The trial court took "notice that the grandfather ha[d] been convicted of criminal offenses against [E.H.]" Father argues that there was no evidence at the hearing that paternal grandfather was convicted of a criminal offense against E.H. and the trial court improperly took judicial notice of paternal grandfather's conviction.

**{¶45}** A review of the transcript and exhibits confirms that there was no evidence at the hearing to support the trial court's factual finding that paternal grandfather had been convicted of criminal offenses against E.H. Rather, the trial court's factual finding is premised entirely upon its citation to the docket of a different case and its taking "notice" of paternal grandfather's conviction in that other case. Judicial notice, however, is limited to the prior proceedings in the instant case before it. *Maiorana v. Maiorana*, 9th Dist. Medina No. 10CA0060-M, 2011-Ohio-4464, ¶ 9, quoting *In re J.C.*, 186 Ohio App.3d 243, 2010-Ohio-637, at ¶ 14. The trial court's reliance upon information contained in a different case to support its factual finding was error. Because it was error to take judicial notice of paternal grandfather's conviction and there was no evidence in the record of paternal grandfather conviction, the trial court erred in its factual finding that paternal grandfather was convicted of criminal offenses against E.H.

**{¶46}** The trial court also found that Father allowed paternal grandfather to care for E.H. on a regular basis. Father disputes the trial court's finding because he contends that the evidence reflects that both he and Mother used paternal grandfather as a childcare provider on a regular basis. Additionally, Father states that there was no testimony that his own "actions in any way contributed to any offenses committed against [E.H.]"

{¶47} In the June 28, 2017 consent entry, Father and Mother each identified three childcare providers that they were using during their respective periods of parenting time. Father listed his childcare providers, in order, as being paternal grandfather, paternal grandmother, and stepmother. Mother did not list paternal grandfather as a childcare provider in the consent entry.

{¶48} Based upon the testimony at the hearing Father and Mother were using the same list of childcare providers eleven months later. Mother testified that during the May 26, 2018 counseling session Father and Mother were asked who they used as childcare providers and Father identified paternal grandfather as one his childcare providers for E.H. Father testified similarly that he gave the counselor a list which consisted of "pretty much family, grandpa, me, [stepmother], my grandma, her boyfriend, * * *, my stepdaughter, * * * my stepson * * *." After identifying her childcare providers, Mother told the counselor that "I can also use [Father's] mom and dad." Mother's testimony indicates the availability to use paternal grandfather as a childcare provider, but it does not indicate that she did use paternal grandfather as a childcare provider *on a regular basis*.

{¶49} The testimony and evidence before the trial court was that Father, and not Mother, used paternal grandfather as a childcare provider on a regular basis. However, we note that this factual finding when considered in context with the erroneous factual finding of paternal grandfather's conviction allows for an inference to be drawn that Father acted in a manner resulting in E.H. being an abused child. Because the trial court's factual finding regarding paternal grandfather's conviction was in error, any inference drawn from that erroneous factual finding is also error.

**Conclusion**

**{¶50}** Despite the trial court's erroneous factual finding regarding paternal grandfather's conviction and any inferences drawn therefrom, there was other testimony and evidence to support the trial court's determination regarding the best interest of E.H. Given the testimony and evidence adduced at the hearing, we cannot conclude that this is the exceptional case where the evidence weighs heavily against the trial court's finding that modification of the parenting time was in the best interest of E.H. Accordingly, the trial court's decision that it was in the best interest of E.H. to reduce Father's parenting time was not against the manifest weight of the evidence. Father's fifth assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. 2**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DESIGNATING MOTHER THE RESIDENTIAL PARENT FOR SCHOOL PURPOSES.

**{¶51}** Father argues the trial court abused its discretion by making Mother the residential parent for purposes of school. We disagree.

**{¶52}** "Trial courts are generally afforded broad discretion in determining whether a modification of parenting rights and responsibilities is necessary." *Bohannon*, 2020-Ohio-1255, at ¶ 26. Accordingly, this Court reviews for an abuse of discretion the trial court's decision to overrule Father's objections to the magistrate's decision modifying the shared parenting plan to designate Mother the residential parent for purposes of school. *See Tabatabai*, 2009-Ohio-3139, at ¶ 17-18; *McDonald*, 2014-Ohio-2861, at ¶ 5-6. Thus, the trial court's decision will be upheld unless it "'is contrary to law, unreasonable, not supported by evidence, or grossly unsound.'" *Menke*, 2015-Ohio-2507, at ¶ 8, quoting *Tretola*, 2015-Ohio-1999, at ¶ 25.

{¶53} As he did in his first assignment of error, Father argues that the trial court's decision designating Mother as the residential parent for school purposes was "devoid of an adequate analysis[.]" In support of this argument, Father incorporates his arguments from the first assignment of error. App.R. 16(A)(7) requires that each assignment of error be separately argued and supported with citation to the facts and legal authority. This Court has explained that a party's incorporation of arguments from another assignment of error fails to comply with the requirements of App.R. 16(A)(7). *State ex rel. Midview Loc. School Dist. Bd. of Edn.*, 2017-Ohio-6928, at ¶ 29; *Vogel*, 2020-Ohio-854, at ¶ 16. Accordingly, Father's reference to his previous argument fails to set forth a separate argument and citation to the facts and legal authority with respect to this assignment of error and we decline to address this portion of Father's second assignment of error. *See* App.R. 12(A)(2) and App.R. 16(A)(7). *See also State ex rel. Midview* at ¶ 29; *Vogel* at ¶ 16. That fact aside, we have overruled his first assignment of error, and thus, those arguments would not successfully support Father's second assignment of error.

{¶54} Father also argues that the trial court erred in designating Mother the residential parent for school purposes because the matter "was not ripe for review[.]" Father contends there was no need to designate a residential parent because Summit Christian Academy provides schooling through the eighth grade, Mother has agreed to leave E.H. enrolled in Summit Christian Academy through the eighth grade, the parties' shared parenting plan requires them to agree or return to court regarding which high school E.H. would attend, and E.H. will not attend high school until 2026.

{¶55} Objections to the magistrate's decision must be specific and all grounds must be stated with particularity. Civ.R. 53(D)(3)(b)(ii). Although Father's supplemental objections addressed the naming of Mother as the residential parent for school purposes, he limited his

objection to a "request[]" that neither parent be named the residential parent for school purposes because "[t]he child is excelling at that school, and both her parents have elected to live a faith based lifestyle that is fostered [by] that environment." Father did not argue in his objections that the designation of the residential parent for school purposes was not ripe for the magistrate's determination. Accordingly, this argument is forfeited for appeal. *See Hose v. Gatliff*, 176 Ohio App.3d 356, 2008-Ohio-2430, ¶ 14-15 (9th Dist.). Moreover, Father has not alleged plain error, and we decline to undertake such an analysis on his behalf. *See Bass-Fineberg Leasing, Inc.*, 2015-Ohio-46, at ¶ 24, quoting *McMaster*, 189 Ohio App.3d 222, 2010-Ohio-3851, at ¶ 20.

{¶56} Father's second assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DESIGNATING MOTHER THE PRIMARY CARRIER OF HEALTH INSURANCE AND BY MAKING HER THE PRIMARY SELECTOR OF HEALTH CARE PROVIDERS.

{¶57} In this assignment of error, Father argues that the trial court abused its discretion when it designated Mother as the primary carrier of health insurance and the primary selector of health care providers for E.H. We reject these arguments.

{¶58} We review a trial court's action on a magistrate's decision for an abuse of discretion, but must do so "with reference to the nature of the underlying matter." *Tabatabai*, 2009-Ohio-3139, at ¶ 17-18. The decision of a trial court to modify a shared parenting plan is reviewed for an abuse of discretion. *Kenney v. Carroll*, 9th Dist. Medina Nos. 13CA0090-M, 15CA0102-M, 2017-Ohio-354, ¶ 18, quoting *Batcher v. Pierce*, 9th Dist. Summit No. 26785, 2013-Ohio-4677, ¶ 22. Similarly, we apply an abuse of discretion standard to a trial court's decision regarding child support matters. *Trombley v. Trombley*, 9th Dist. Medina No. 17CA0012-M, 2018-Ohio-1880, ¶ 31. Thus, the trial court's decision will be upheld unless it "'is contrary to

law, unreasonable, not supported by evidence, or grossly unsound.'" *Menke*, 2015-Ohio-2507, at ¶ 8, quoting *Tretola*, 2015-Ohio-1999, at ¶ 25.

{¶59}  Modification of the terms of a shared parenting plan by the trial court is governed by R.C. 3109.04(E)(2)(b), which only requires the trial court to consider whether the modification is in the best interest of the child. *Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, at ¶ 29, 33. *Accord Kenney* at ¶ 18, quoting *Syverson v. Syverson*, 9th Dist. Lorain No. 12CA010205, 2012-Ohio-5569, ¶ 9; *Dietrich v. Dietrich*, 9th Dist. Summit No. 26919, 2014-Ohio-4782, ¶ 27.  Provisions regarding the child's medical and dental care and child support obligations are considered terms of the shared parenting plan. *See* R.C. 3109.04(G). *See also Fisher* at ¶ 28, 30.  Terms regarding health care coverage are related to child support. *See* R.C. 3119.30(A) (When child support is issued or modified, the court must also determine who will provide health insurance coverage for the child subject to the child support order.).

### Primary selector of medical providers

{¶60}  To the extent Father argues that the trial court abused its discretion by designating Mother as the parent to select the medical providers for E.H., we conclude that Father has forfeited all but plain error as to this issue. *See* Civ.R. 53(D)(3)(b)(iv).  The record reflects that Father did not object to the magistrate's decision on this basis. *See* Civ.R. 53(D)(3)(b)(ii).  Rather, Father objected only to the magistrate's designation of Mother as the primary insurance carrier as not being in the best interest of E.H.  Because Father's objections failed to raise the issue of Mother being named as the parent to select medical providers for E.H., this Court cannot address that issue on appeal. *See Varner v. Varner*, 170 Ohio App.3d 448, 2007-Ohio-675, ¶ 22 (9th Dist.). Furthermore, Father has not made a claim for plain error and we decline to undertake such an

analysis on his behalf. *See Bass-Fineberg Leasing, Inc.*, 2015-Ohio-46, at ¶ 24, quoting *McMaster*, 189 Ohio App.3d 222, 2010-Ohio-3851, at ¶ 20.

## Primary insurance coverage

{¶61} Father argues that the trial court failed to provide an explanation for removing him as the primary insurer. Contrary to Father's position, the trial court found that Father's health insurance costs $1,344 and is limited to in-network providers and Mother's health insurance costs $1,428 and provides better coverage. Also, the trial court found that Father used his status of providing primary insurance coverage to conceal changes to E.H.'s health care providers without Mother's knowledge. The trial court went on to conclude that the switch to Father's health insurance coverage did not justify Father's failure to communicate with Mother regarding the change in E.H.'s health care providers.

{¶62} Father, however, contends that he did notify Mother of the changes in the medical providers. While both Mother and Father testified that Father told Mother of the change of E.H.'s pediatrician and counselor, Father's position fails to recognize that the timing of the disclosures is also relevant to the trial court's finding. The testimony reflects that Father's disclosure of these changes occurred after he made the changes, rather than prior to making the changes. Father conceded this point on cross-examination. Moreover, Mother testified that she learned of the change to the pediatrician when she was scheduling an appointment for E.H. to receive her immunizations with her prior pediatrician. E.H. indicated that stepmother had already taken her to the doctor for her shots. Upon contacting Father, he informed Mother that E.H. had a new pediatrician and she had already received her shots. As for E.H.'s counselor, Mother knew Father had terminated E.H.'s previous counselor, but she did not know that he had engaged a new counselor. The new counselor was brought to Mother's attention by E.H. when she indicated that

she had seen a counselor. Furthermore, Father confirmed in cross-examination that he twice took E.H to see a new counselor but did not inform Mother of the new counselor prior to those sessions.

{¶63} Father attempts to shift the blame to the trial court, claiming it failed in its obligation to safeguard against any provisions in the June 28, 2017 consent entry that could cause confusion. Father contends that Article XIII of the shared parenting plan allowed him to change E.H.'s healthcare providers because of the change in insurance coverage. Father's argument suggests that he was not required to tell Mother in advance of the changes in the healthcare providers. Rather, he argues that the trial court, the guardian ad litem, and their attorneys should have addressed what medical providers would change after Father became the primary insurer. Additionally, Father argues that the trial court failed to examine the shared parenting plan in June 2017, resulting in the June 28, 2017 consent entry being deficient regarding the requirements for discussing changing health care providers. Thus, Father concludes that the trial court is now "punishing him for an outcome that was foreseeable before the parties left court in June of 2017[]" and "for a situation that it was partially responsible for creating."

{¶64} Father's arguments belie the provision in the shared parenting plan regarding changes of medical providers due to a change in health insurance coverage. Article XIII of the shared parenting plan provides as follows:

> The parents agree to continue to use medical, dental and other professionals as the child [has] been seeing unless there is a change in hospitalization coverage, which would necessitate the use of medical providers under the plan of hospitalization. *In the event any change in medical or dental providers is necessary, parents agree to consult with each other prior to making arrangements for alternative medical or dental care.*

(Emphasis added.) While Father was permitted to change E.H.'s health care providers due to the change in the insurance, by the terms of the shared parenting plan Father was required to consult with Mother *prior* to making such changes. Because this provision existed in the shared parenting

plan, Father's attempt to shift blame to the trial court, the guardian ad litem, and their attorneys for his failure to communicate with Mother prior to changing E.H.'s healthcare providers is not well-taken.

{¶65} Additionally, Father claims in his brief that his insurance is in E.H.'s best interest because it provides "better access to the top tier physicians at the Cleveland Clinic[.]" While Father testified that his insurance is provided through Cleveland Clinic, there was no testimony regarding the quality of the medical care E.H. would receive under Father's insurance.

{¶66} Father also contends that Mother's insurance policy is not in the best interest of E.H. because it costs more and only provides health coverage, while Father's insurance costs less and also includes dental and vision coverage. Father suggests that it would be better for Mother to use the money she pays for insurance on more pertinent expenses for E.H. While Father objected to the magistrate's decision regarding the designation of Mother's insurance as primary, Father did not raise any of these issues in his objections and has forfeited these arguments on appeal. *See Quintile*, 2008-Ohio-5657, at ¶ 15. Furthermore, Father has not made a claim for plain error and we decline to undertake such an analysis on his behalf. *See Bass-Fineberg Leasing, Inc.*, 2015-Ohio-46, at ¶ 24, quoting *McMaster*, 189 Ohio App.3d 222, 2010-Ohio-3851, at ¶ 20.

{¶67} Lastly, Father cites to R.C. 3119.30(B)(1) and argues that the trial court failed to perform the proper analysis regarding the rebuttable presumption that Mother, as the child support obligee, is to provide health insurance. Father's argument is misplaced because he relies upon the wrong version of this statute.

{¶68} This Court has recognized that "[g]enerally, courts must apply the statute in effect when the motion to modify child support is filed." *Rodriguez v. Rodriguez*, 9th Dist. Lorain No. 00CA007699, 2001 WL 458674, *2 (May 2, 2001), fn. 1. *See Ohlemacher v. Ohlemacher*, 9th

Dist. Lorain No. 02CA008108, 2003-Ohio-368, ¶ 10, fn. 2; *Berthelot v. Berthelot*, 154 Ohio App.3d 101, 2003-Ohio-4519, ¶ 10, (9th Dist.), fn. 1. Mother filed her motion to modify child support on May, 2, 2018. The current version of R.C. 3119.30(B) cited by Father became effective on October 17, 2019, after Mother filed her motion to modify child support. Moreover, R.C. 3119.30(B) in effect on May 2, 2018, unlike the current version, contains no provisions regarding the use of a rebuttable presumption to determine whether the child support obligee or obligor is to provide insurance coverage to the child. *Compare* R.C. 3119.30(B)(1) *with* former R.C. 3119.30(B), Am.Sub.H.B. 119, 2007 Ohio Laws File 15.

{¶69} Upon review of the record, we cannot conclude that the trial court's decision designating Mother as the primary selector of health care providers and Mother's insurance as primary coverage constituted an abuse of discretion. Father's third assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ISSUING A CHILD SUPPORT ORDER AFTER IMPROPERLY MODIFYING THE COMPANIONSHIP SCHEDULE, BY FAILING TO GRANT FATHER A DEVIATION FROM THE CHILD SUPPORT GUIDELINES, AND BY AWARDING MOTHER WITH THE ANNUAL TAX DEPENDENCY EXEMPTION.

{¶70} Father argues that the trial court abused its discretion by ordering him to pay child support, not granting him a downward deviation from the child support guidelines, and awarding the tax dependency exemption to Mother. We disagree.

{¶71} We review a trial court's action on a magistrate's decision for an abuse of discretion, but must do so "with reference to the nature of the underlying matter." *Tabatabai*, 2009-Ohio-3139, at ¶ 17-18. Appellate courts review a trial court's decision modifying child

support obligations, including decisions to deviate the child support obligation, using an abuse of discretion standard. *See Maiorana*, 2011-Ohio-4464, at ¶ 4-5. Additionally, this Court reviews a trial court's decision regarding the allocation of a dependent child tax exemption for an abuse of discretion. *In re L.B.S.*, 9th Dist. Wayne Nos. 18AP0007, 18AP0010, 2019-Ohio-3312, ¶ 30, quoting *Loewen*, 2018-Ohio-73, at ¶ 62. Thus, the trial court's decision will be upheld unless it "'is contrary to law, unreasonable, not supported by evidence, or grossly unsound.'" *Menke*, 2015-Ohio-2507, at ¶ 8, quoting *Tretola*, 2015-Ohio-1999, at ¶ 25.

### Child Support

{¶72} Father contends that the trial court's decision with regard to the modification of child support is deficient for multiple reasons: it does not acknowledge Mother's motion to modify child support; it does not find that modification of child support is appropriate, fair, reasonable, just, and in the best interest of E.H.; and it contains no legal authority or analysis for its decision to modify the parties' agreement, to impose child support, and to deny a deviation in child support. Father also claims that the trial court abused its discretion by not applying the child support deviation agreed to by the parties at the time of the divorce in the shared parenting plan. Additionally, Father argues that he should receive a deviation in child support for the cost of E.H.'s private school tuition; the expense of E.H.'s tae kwon do training; out-of-pocket insurance expenses; and the costs for medical, dental, and vision insurance related to being the secondary insurance provider.

{¶73} The entirety of Father's legal authority in support of these arguments is stated as follows: "The statutes that control child support calculations and grounds for deviation are under [C]hapter 3119 of the Ohio Revised Code." Chapter 3119 of the Ohio Revised Code contains approximately one hundred statutes, of which twenty-one pertain to the calculation of support

obligations and another twenty-two address the review of support orders. Father does not attempt to identify which statute or statutes apply to his various arguments or cite any relevant case law. *See* App.R. 16(A)(7). Nor does he develop an argument regarding why the trial court's decision was deficient or in violation of the child support statutes, the impact of an agreement to deviate in a shared parenting plan, the factors to be considered for a deviation, and the adjustment of a child support order for the payment of certain appropriate expenses. *See id*. Rather, Father leaves it to this Court to guess which statute he is relying upon and to formulate his arguments for him. We, however, have repeatedly held that it is not this Court's duty to develop an argument in support of an assignment of error, even if one exists. *See Cardone*, 1998 WL 224934, at *8. Father has failed in his burden of supporting his contentions with proper legal authority and developing an argument. *See* App.R. 16(A)(7). Accordingly, we decline to address these portions of Father's assignment of error. *See* App.R. 12(A)(2); App.R. 16(A)(7).

**{¶74}** Additionally, Father's arguments that he should receive a deviation in child support for the cost of E.H.'s tae kwon do training, out-of-pocket insurance expenses, and the costs for medical, dental, and vision insurance are forfeited because he did not raise these issues in his objections. *See Akin v. Akin*, 9th Dist. Summit Nos. 25524, 25543, 2011-Ohio-2765, ¶ 45-46. Moreover, Father has not argued plain error and we will not make the argument for him. *See Bass-Fineberg Leasing, Inc.*, 2015-Ohio-46, at ¶ 24, quoting *McMaster*, 189 Ohio App.3d 222, 2010-Ohio-3851, at ¶ 20.

**{¶75}** Related to the deviation in child support for tuition costs, Father asks this Court to consider the effect of not granting him this deviation. Father suggests that since Mother has been designated the residential parent for school purposes, if he is unable to pay the tuition because of his new child support obligations, Mother will have authority to change E.H.'s school. Father fails

to cite any legal authority or to explain why this is a relevant consideration in deviating the child support obligation. *See* App.R. 16(A)(7). Moreover, Father did not assert this argument in his objections to the magistrate's decision and has forfeited it on appeal. *See Trombley*, 2018-Ohio-1880, at ¶ 10. Nor has Father argued plain error. *See id.*

**{¶76}** Lastly, Father re-asserts and incorporates all of his arguments in his first and fifth assignments of error to argue that the parenting time should revert to equal time, thereby restoring the original child support deviation. This Court has already considered and overruled Father's arguments regarding the modification of the parenting time. Because there has been a modification of the shared parenting plan, it was necessary for the trial court to review the existing child support order and enter a new order. *See Ankney*, 2006-Ohio-6009, ¶ at 34, *overruled on other grounds by Gunderman*, 2009-Ohio-3787, at ¶ 13. Based upon our disposition of the first and fifth assignments of error, the original child support deviation cannot be summarily restored.

### Tax Dependency Exemption

**{¶77}** Father argues that the trial court abused its discretion by awarding the tax dependency exemption to Mother. This Court, however, need not address the merits of Father's argument because he did not raise this issue in his objections to the magistrate's decision and has forfeited all but plain error on appeal. *See* Civ.R. 53(D)(3)(b)(iv); *Walters*, 2013-Ohio-636, at ¶ 15. Further, Father has not made a plain error argument and we decline to undertake such an analysis on his behalf. *See Bass-Fineberg Leasing, Inc.*, 2015-Ohio-46, at ¶ 24, quoting *McMaster*, 189 Ohio App.3d 222, 2010-Ohio-3851, at ¶ 20.

**{¶78}** Upon review of the record, we cannot conclude that the trial court abused its discretion when it modified the child support and awarded Mother the tax dependency exemption. Father's fourth assignment of error is overruled.

III.

{¶79} Mr. Herron's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

BETH A. BLACKMORE, Attorney at Law, for Appellant.

CHANDRA M. MUSTER, Attorney at Law, for Appellee.