[Cite as *Bohannon v. Bohannon*, 2020-Ohio-1255.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

TIMOTHY J. BOHANNON

    Appellant

v.

LYNN M. BOHANNON

    Appellee

C.A. No.     29320

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DR-2008-01-0086

DECISION AND JOURNAL ENTRY

Dated: April 1, 2020

---

CARR, Judge.

{¶1}    Appellant, Timothy Bohannon, appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I.

{¶2}    Timothy Bohannon ("Father") and Lynn Bohannon ("Mother") were divorced in 2010. Thereafter, Father and Mother became embroiled in a dispute regarding parental rights and responsibilities.

{¶3}    Many of the relevant procedural facts in this matter were set forth in a prior decision of this Court rendered on July 25, 2018. *Bohannon v. Bohannon*, 9th Dist. Summit No. 28906, 2018-Ohio-2919 *("Bohannon I")*. The facts, as set forth in *Bohannon I*, are as follows:

> Father and Mother were divorced in 2010, at which time they had three unemancipated children. Mother was named the residential parent, and Father received a combination of both supervised and unsupervised parenting time with the children. In addition, Father was ordered to pay child support. After various post-decree issues arose, Father and Mother entered into an agreed judgment entry on April 24, 2014, wherein Father was to receive parenting time with the two

remaining unemancipated children for one-half of the summers and school breaks, Wednesday overnight visitation with the youngest child, K., and telephone contact with both children twice a week.

Over the course of time, [the Child Support Enforcement Agency ("CSEA")] recommended increases in the amount of Father's child support obligation after conducting administrative review hearings. Father filed objections with the domestic relations court after every administrative review recommendation. The most recent objection * * * was filed on November 22, 2016. By that time, only K. remained unemancipated and the subject of a child support order. That objection requested a downward deviation of child support based on an adjustment for Father's cost of living.

In addition, Father filed three post-decree motions for Mother to show cause why she should not be held in contempt for violating parenting time orders. In the first, filed June 16, 2016, Father alleged that Mother prevented him from exercising parenting time with K. for the one-half of the summer to which he was entitled. In the second, filed October 6, 2016, he alleged that Mother interfered with his ability to have telephone contact with K., as well as Wednesday and every other weekend visits with the child. In the third motion to show cause, filed March 2, 2017, Father alleged that Mother continued to deny him his ordered parenting time.

Although the trial court issued multiple notices for hearings on the motions and objections to occur on October 12, 2016, December 15, 2016, February 10, 2017, and May 9, 2017, the matters were not actually heard until the May 2017 date. In all instances, the notices of hearings noted the starting time for the hearing, but did not identify the length of time allotted for the hearing. The May 9, 2017 hearing was scheduled to begin at 1 p.m. Both parties filed witness and exhibit lists in advance of the hearing. Father notified the court and Mother that he intended to present 18 exhibits and four witnesses, while Mother notified the court and Father that she intended to present nine exhibits and six witnesses. In addition, the domestic relations court had appointed a guardian ad litem for K. Based on the guardian's time log filed with the court, she spent over 14 hours investigating issues relevant to the pending motions, one hour in court during the May 9, 2017 hearing, and approximately six hours preparing a report.

At the beginning of the hearing on Father's objections to the CSEA administrative recommendation and three contempt motions, the magistrate informed the parties that they would have a total of one hour in which to present evidence. The magistrate gave each party ten minutes to address the issue of the CSEA recommendation and Father's request for a downward deviation of his child support obligation, and twenty minutes each to address all three contempt motions. When Father indicated that he would need more time, the magistrate reiterated that she had scheduled the hearing for one hour and that neither party had moved the court for additional time in advance.

The magistrate set a timer on her computer and held the parties to their allotted times. Only Father and Mother testified. None of the listed witnesses on either party's witness list testified. Neither did the guardian ad litem, whose time log indicated she was present for the hearing, render a report.

The magistrate subsequently issued a one-and-a-half page decision in which she denied Father's three contempt motions "for lack of evidence" and overruled his objections to the CSEA administrative review recommendation. Father filed timely objections, which he supplemented after the filing of the transcript. In addition to challenging the magistrate's factual findings, Father argued that the magistrate unreasonably limited his ability to present evidence in support of his motions and objections by imposing arbitrary time restrictions without prior notice at the hearing. Mother responded in opposition. The domestic relations court issued a judgment in which it denied Father's objections to the magistrate's decision, denied his three contempt motions, and overruled his objections to the CSEA recommendation and request for a downward deviation of his child support obligation. * * *.

*Bohannon I* at ¶ 2-8.

{¶4} Father appealed from the trial court's decision and raised three assignments of error. Most notably, Father argued that the trial court abused its discretion when it limited the time he had to present evidence on his three contempt motions as well as his objections to the CSEA recommendation. *Id.* at ¶ 9. This Court ultimately reversed the trial court's judgment on the basis that "the domestic relations court abused its discretion when it unreasonably limited the time for hearing on the four pending motions/objections, summarily overruled Father's objection to the time limitation, and then denied Father's contempt motions 'for lack of evidence.'" *Id.* at ¶ 20. This Court declined to address Father's remaining assignments of error as they were rendered moot. *Id.* at ¶ 21.

{¶5} On remand, the trial court held a pretrial conference and then set the matter for trial. A two-day trial commenced on January 9, 2019. On January 23, 2019, the trial court issued a journal entry overruling Father's three contempt motions and denying his objections to the CSEA

recommendation. The trial court also granted a motion to reallocate parental rights and responsibilities filed by Mother and denied a motion to increase parenting time filed by Father.

{¶6} On appeal, Bohannon raises three assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO ADHERE TO THE MANDATE OF THIS HONORABLE COURT ISSUED IN CASE NUMBER CA-28906 ON JULY 25, 2018.

{¶7} In his first assignment of error, Bohannon contends that the trial court disregarded the mandate of this Court's decision issued on July 25, 2018.

{¶8} "It is not within the discretion of an inferior court 'to disregard the mandate of a superior court in a prior appeal in the same case.'" *Marquez v. Jackson*, 9th Dist. Lorain No. 16CA011049, 2018-Ohio-346, ¶ 14, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). "The purpose of this doctrine, which is more of a rule of practice than a 'binding substantive rule of law,' is to ensure consistency within a case, 'to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution.'" *Marquez* at ¶ 14, quoting *Nolan* at 3. "Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law." *Marquez* at ¶ 14, quoting *Nolan* at 3.

{¶9} In support of his contention that the trial court disregarded a mandate from this Court, Father points to the following passage from this Court's decision in *Bohannon I*:

In *Brewer v. Brewer*, 5th Dist. Licking No. 08 CA 0400, 2009-Ohio-249, our sister district concluded that the appellant had been "afforded ample opportunity to present his arguments to the trial court as evidenced by the numerous decisions issued by the Magistrate in this case." *Id.* at ¶ 31. In the instant case, however, not

only were Father's issues not addressed on prior occasions, but his multiple contempt motions had been pending for a significant amount of time. In fact, his first contempt motion had been pending for approximately 11 months before it finally came before the trial court. Given the fact that there is no way to go back in time and restore missed parenting time, the best a parent can hope for is that he or she will be awarded future substitute time and incentives to deter the other parent from further interference. When the child at issue is a teenager, as here, timely and full consideration of the issues is even more critical.

*Bohannon I*, 2018-Ohio-2919, at ¶ 15.

{¶10} Father argues that the trial court disregarded the mandate from this Court when it "cut [F]ather's companionship time virtually to zero and made it contingent upon initiation by a now sixteen year old who had ignored the agreed-upon companionship schedule for the past four years without consequence."

{¶11} Father's argument is without merit. In sustaining Father's first assignment of error in *Bohannon I*, this Court concluded that the trial court abused its discretion when it limited the time for presenting evidence on Father's motions and objections and then overruled those same motions and objections based on a lack of evidence. *Bohannon I* at ¶ 20. While this Court expressed concern with various delays that occurred in the trial court proceedings, it took no position on the merits of the substantive issues raised by Father before the trial court. On remand, the trial court promptly conducted a two-day trial where the parties were provided ample opportunity to present evidence. Following trial, the trial court issued a journal entry ruling on all outstanding issues before the court. Under these circumstances, we cannot say that the trial court disregarded the mandate of *Bohannon I*.

{¶12} Father's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO GRANT FATHER'S THREE CONTEMPT MOTIONS[.]

{¶13} In his second assignment of error, Father contends that the trial court erred and abused its discretion when it denied the three motions for contempt that he filed in this matter. This Court disagrees.

{¶14} "This Court reviews contempt proceedings for an abuse of discretion." *Zemla v. Zemla*, 9th Dist. Wayne No. 11CA0010, 2012-Ohio-2829, ¶ 8. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶15} "To establish contempt, the moving party must 'establish a valid court order, knowledge of the order by the defendant, and a violation of the order.'" *Henry v. Henry*, 9th Dist. Summit No. 27696, 2015-Ohio-4350, ¶ 12, quoting *State v. Komadina*, 9th Dist. Lorain No. 03CA008325, 2004-Ohio-4962, ¶ 11. "In civil contempt proceedings, a finding of contempt must be premised on clear and convincing evidence." *Zemla* at ¶ 11, citing *Romans v. Romans*, 9th Dist. Summit No. 23181, 2006-Ohio-6554, ¶ 9. The party seeking to hold the other in contempt bears the burden of proving the other's failure to comply with an order of the court. *Zemla* at ¶ 11, citing *Rossen v. Rossen*, 2 Ohio App.2d 381, 383-384 (9th Dist.1964). "Once the movant proves his [or her] prima facie case, the contemnor must present evidence of [his or] her inability to comply with the order or any other available defense." *Zemla* at ¶ 11, citing *Rossen* at 384.

{¶16} Father and Mother initially entered into an agreement allocating parental rights and responsibilities on January 21, 2010. On April 24, 2014, the trial court issued an agreed entry modifying Mother and Father's agreement with respect to parenting time. Subsequently, Father

filed three separate contempt motions arguing that Mother had failed to comply with the terms of the parenting time agreement. All three motions were denied by the trial court in its January 23, 2019 journal entry.

{¶17} On June 16, 2016, Father filed a motion to show cause as to why Mother should not be held in contempt for failing to comply with the trial court's April 24, 2014 order with respect to parenting time during K.'s summer vacation. The April 24, 2014 agreed entry stated that the parties were each entitled to parenting time equal to half of summer vacation. The trial court denied this motion for contempt on the basis that Mother offered to split parenting time on a "week-on/week-off schedule[]" and Father would not agree.

{¶18} On October 6, 2016, Father filed a second motion for contempt arguing that Mother had obstructed and refused to facilitate telephone contact between Father and K. and that Mother had further interfered with Father's parenting time on Wednesdays and alternating weekends. The April 24, 2014 agreed entry stated that Father would have Wednesday visitation and that he would pick up K. after school on Wednesdays and bring her to school the following morning. The agreed entry further stated that Father was entitled to telephone contact with K. twice per week and Mother was to refrain from interfering with that right. The trial court denied this motion for contempt on the basis that "Father had agreed to not visit on Wednesdays because of his employment in Columbus, Ohio." The trial court further found that Mother had used her best efforts to encourage K. to spend time with Father and that K. requested limited contact on her own.

{¶19} In his final contempt motion, filed on March 2, 2017, Father again argued that Mother had interfered with phone time and the visitation schedule. The trial court denied this motion on the same grounds that it denied the October 6, 2016 motion.

{¶20} On appeal, Father contends Mother should have been held in contempt because she failed to comply with the parties' parenting time agreement. Father cites a number of cases for the proposition that a custodial parent must do more than merely encourage minor children to visit the non-custodial parent and instead must adhere to a visitation schedule. Father concludes that the trial court should have found Mother in contempt and ordered that the missed parenting time be made up.

{¶21} A review of the evidence presented at trial reveals that Father's argument is without merit. Mother testified that she made a consistent effort to support Father's parenting time. The Guardian ad Litem ("GAL") concurred with this sentiment and testified that Mother sought to comply with the companionship order. The GAL explained that Mother ensured that "[K.] had to be available at the time set for the start of the companionship time unless [M]other was informed that maybe [K.] and [F]ather had worked out some other arrangement." When K. did not want to see Father at the scheduled times, "[M]other [would] tell[] [K.] she had to go regardless[.]" In response, K. would agree to visit with Father "[s]ometimes [but] [n]ot all the time." Father disputed this narrative during his testimony and insisted that Mother has sought to interfere with his relationship with K. This Court is mindful that the trier of fact is in the best position to resolve credibility issues during a contempt proceeding and a difference of opinion with respect to the trial court's determination in that regard does not constitute legitimate grounds for reversal. *Geary v. Geary*, 5th Dist. Delaware No. 14CAF050033, 2015-Ohio-259, ¶ 34

{¶22} Additional evidence presented at the hearing largely showed that Father's missed parenting time resulted from rising tensions in the relationship between Father and K. According to the GAL, K. suggested that her relationship with Father began to decline in 2016 when, during a spring break trip to Washington, D.C., Father initiated a conversation with K. about her uncle's

suicide that K. found disturbing. The GAL noted that Father disputed the assertion that the conversation was handled inappropriately. Around that time, Father's work schedule resulted in the cancelation of certain scheduled visitations and K. expressed a desire to see Father less frequently.[1] At the recommendation of the GAL, Father and K. began joint counseling but the sessions did not result in any meaningful progress. K. became upset when Father requested notes from K.'s individual counselor. Father also filed a complaint against K.'s counselor to the State board. The GAL further testified that K. felt she was being "cyber bullied" by Father during text conversations. Father called the police after K. took measures to avoid scheduled visitations, such as taking the bus home from school instead of meeting Father. Father filed "unruly" charges against K. when she refused to take part in parenting time. The GAL explained that K. no longer wanted to visit with Father due to the deterioration in their relationship.

{¶23} With respect to the summer visitation schedule, the evidence presented at the hearing showed that Mother offered to split time evenly but Father was not agreeable. Mother testified that the parties had used a "one week on and one week off" schedule in the summer of 2015. Mother did not agree with Father's parenting time proposal for the summer of 2016 "[b]ecause it did not follow the cadence of the time that we had been following the summer before." Mother explained, "Our 2011 order and starting I believe it was [20]14 and [20]15, we had one week on and one week off. It was a seven-day period, and [Father's proposal] did not line up with that at all." When Mother offered to continue to split summer parenting time on a week on/week off basis, Father rejected the offer and filed an emergency motion to enforce parenting time, which was denied. In regard to weekly visitation and telephone time during the school year,

---

[1] While Father maintains a residence in Stow, Ohio, his primary residence is in Muncie, Indiana. Father also maintained a residence in Columbus, Ohio, at times relevant to these proceedings but he no longer maintains that residence.

Mother sought to comply with the agreement by ensuring that K. was available at the scheduled times and by not allowing K. to engage in alternate social activities when she did not want to see Father. Mother testified that the expectation was that "[K.] had to be available and that she was to go." Under these circumstances, where Father failed to demonstrate that Mother failed to comply with the parenting time order, Father cannot prevail on his assignment of error.

{¶24} The second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS MODIFICATION OF THE PARENTING TIME FOR FATHER[.]

{¶25} In his final assignment of error, Father contends that the trial court abused its discretion in modifying Father's parenting time. This Court disagrees.

{¶26} Trial courts are generally afforded broad discretion in determining whether a modification of parenting rights and responsibilities is necessary. *See David v. Flickinger*, 77 Ohio St.3d 415 (1997), paragraphs one and two of the syllabus.

{¶27} On July 15, 2016, Mother filed a motion to reallocate parental rights and responsibilities wherein she requested that parenting time for Father be reduced. Thereafter, on October 5, 2016, Father filed his own motion to modify parental rights and responsibilities wherein he requested an increase in parenting time on the basis that Mother had consistently interfered with the existing parenting time agreement.

{¶28} In its January 23, 2019 journal entry, the trial court granted Mother's motion and denied Father's motion. In support of its decision, the trial court identified a number of troubling actions that Father had taken toward K., including "calling the police, threatening to take her to a mental hospital, undermining or sabotaging [K.'s] counseling and refusing to accept [K.'s] request for limited contact, especially texts." The trial court indicated that Father's behavior had caused a

change in circumstances in the relationship between Father and K. and that, under the relevant statutory factors, a change in parental rights was in K.'s best interest. Accordingly, the trial court ordered that "[e]ffective January 16, 2019, Father will have time with [K.] as agreed between [K.] and Father. Father may contact [K.] by telephone, text, or social media one time per week."

{¶29} On appeal, Father challenges the trial court's modification of parenting time on the basis that it effectively awarded "no companionship" to him because K. has "the right to veto any companionship." Father asserts that the trial court took this course of action without making a best interest determination or any findings regarding his fitness as a parent. Father also cites to Loc.R. 31 of the Summit County Court of Common Pleas, Domestic Relations Division, in support of his contention that "[t]he nonvisitation order issued by the trial court is a far cry from the expansive 'default' companionship set by court rule."

{¶30} Father's contentions are not supported by the record. Contrary to Father's primary assertion, the trial court did not eliminate parenting time. Given that Father's relationship with K. had become incredibly strained due to growing communication issues, the trial court ordered that Father may contact K. once a week by phone, text, or social media in order to set up an agreed visitation time. The trial court's action was not tantamount to terminating his visitation rights. While Father contends that the trial court failed to make a best interest determination or asses his fitness as a parent, the trial court found that there had been a change in circumstances because Father's actions had caused his relationship with K. to deteriorate. The trial court further noted that it had considered the statutory best interest factors in determining whether a modification of parenting time was in K.'s best interest. Finally, Father's reliance on Loc.R. 31 of the Summit County Court of Common Pleas, Domestic Relations Division, is misplaced as that rule sets forth a default visitation schedule for parenting time in the absence of an agreement by the parties or a

court order with other provisions. Here, the trial court's modified parenting time order in its January 23, 2019 journal entry departed from the default order in light of the trial court's consideration of the evolving circumstances in this case. Accordingly, we cannot say that the trial court's decision to modify parenting time in this case was unreasonable, arbitrary or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶31} Father's final assignment of error is overruled.

### III.

{¶32} Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

                                 _____

                                 DONNA J. CARR
                                 FOR THE COURT

CALLAHAN, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JOYCE E. BARRETT and JAMES P. REDDY, Attorneys at Law, for Appellant.

ROBERT ROE FOX, Attorney at Law, for Appellee.