[Cite as *Douglass v. Raymond*, 2025-Ohio-4549.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

ELLEN DOUGLASS

    Appellee

    v.

JEFFREY RAYMOND

    Appellant

C.A. No.    31207

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DR 2019-12-3309

DECISION AND JOURNAL ENTRY

Dated: September 30, 2025

CARR, Judge.

{¶1}    Defendant-Appellant Jeffrey Raymond ("Father") appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I.

{¶2}    Father and Plaintiff-Appellee Ellen Douglass ("Mother") married in 2015. The parties have two children, a daughter born in 2014 and a son born in 2018. Father and Mother, acting pro se, dissolved their marriage in January 2020. The judgment included a separation agreement and shared parenting plan. In lieu of child support, the parties agreed to a children's checkbook, whereby expenses for the children would be divided equally between the parties. Following the dissolution, the parties continued to litigate issues that arose concerning the children.

{¶3}    In September 2020, the trial court issued an entry which eliminated the children's checkbook provision from the shared parenting plan and ordered Father to pay $917.43 per month

in child support and $40.03 per month in cash medical support; the total with the processing fee was $976.61 per month.

{¶4} In May 2021, the parties entered into a revised shared parenting plan, which was adopted by the trial court as an agreed judgment entry. Therein, each party agreed to each pay half of the work-related childcare expenses the parties incurred. Mother was also named the residential parent for school purposes.

{¶5} In October 2021, Mother filed a motion seeking to hold Father in contempt for failure to pay his half of the work-related childcare costs. Father was subsequently found to be in contempt. Father ultimately paid the sum that had been due but failed to continue paying his share of the childcare costs; thus, the purge period was extended. By October 2022, Father had purged the contempt.

{¶6} In October 2022, Father filed a motion to terminate or modify the shared parenting plan and to reallocate parental rights and responsibilities and child support. Father sought to be named the residential parent of the children. In February 2023, Mother filed a motion seeking to terminate the shared parenting plan and have her named the residential parent. In September 2023, Mother filed another motion seeking to hold Father in contempt for his failure to pay his portion of the childcare costs.

{¶7} The matter proceeded to a hearing before a magistrate in October 2023. On January 29, 2024, the magistrate issued a decision. The trial court adopted the magistrate's decision and entered judgment accordingly that same day. Father filed objections and supplemental objections to the magistrate's decision. The trial court overruled Father's objections.

{¶8} Father has appealed, raising four assignments of error for our review, some of which will be consolidated to facilitate our analysis.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY MODIFYING THE SHARED PARENTING PLAN, REDUCING APPELLANT/FATHER'S MIDWEEK PARENTING TIME FROM TWO DESIGNATED DAYS AND TIMES EACH WEEK TO ONE DAY A WEEK, AND FURTHER MANDATING THE MIDWEEK VISIT TAKE PLACE IN SUMMIT COUNTY OR THIRTY (30) MINUTES FROM APPELLEE-MOTHER'S RESIDENCE, WHICH IS CONTRARY TO BOTH WHAT THE COURT EVALUATOR RECOMMENDED AND THE APPELLANT/FATHER REQUESTED, AND INAPPOSITE TO THE CHILDREN'S EXPRESSED INTEREST IN SPENDING MORE TIME WITH APPELLANT-FATHER.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY MODIFYING THE SHARED PARENTING PLAN, MANDATING APPELLANT/FATHER TO PROVIDE ALL TRANSPORTATION FOR THE THREE "BANKING" HOLIDAYS AWARDED TO APPELLANT/FATHER, BEGINNING AFTER SCHOOL UNTIL 8:00 P.M., NOTWITHSTANDING THE APPELLEE/MOTHER WAS RARELY PROVIDING TRANSPORTATION FOR THE CHILDREN'S VISITATION WHICH IS CONTRARY TO THE MAY 2021 SHARED PARENTING PLAN.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY NOT DESIGNATING THE APPELLANT/FATHER AS RESIDENTIAL PARENT FOR SCHOOL PURPOSES AND KEEPING THE APPELLEE/MOTHER AS THE RESIDENTIAL PARENT FOR SCHOOL PURPOSES, PARTICULARLY SINCE THE CHILDREN DO NOT ATTEND SCHOOL IN THE MOTHER'S SCHOOL DISTRICT.

{¶9} Father argues in his first assignment of error that the trial court abused its discretion in making changes to Father's midweek parenting time. Father argues in his second assignment of error that the trial court abused its discretion in its determination of the specific details of Father's parenting time on Martin Luther King Day, President's Day, and Veteran's Day. Father argues in his third assignment of error that the trial court abused its discretion in failing to name

him the residential parent for school purposes. As all three assignments of error relate to the parties' shared parenting plan, they will be addressed together.

{¶10} "This Court generally reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. In so doing, we consider the trial court's action with reference to the nature of the underlying matter." (Internal quotations and citations omitted.) *Herron v. Herron*, 2021-Ohio-2223, ¶ 8 (9th Dist.). "Trial courts are generally afforded broad discretion in determining whether a modification of parenting rights and responsibilities is necessary." *Id.*, quoting *Bohannon v. Bohannon*, 2020-Ohio-1255, ¶ 26 (9th Dist.). "A trial court's decision modifying the parties' parenting time in a shared parenting plan is reviewed for an abuse of discretion." *Herron* at ¶ 8. An abuse of discretion indicates that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶11} "This Court has held that a motion to modify parenting time under a shared parenting plan is reviewed under R.C. 3109.04(E)(1)(a) because the motion seeks to reallocate the parental rights and responsibilities set forth in a prior decree." *Herron* at ¶ 9. R.C. 3109.04(E)(1)(a) states that "[t]he court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child." "In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest

of the child and . . . [t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a)(iii).

In determining the best interest of a child pursuant to [R.C. 3109.04], whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1).

{¶12} The Family Court Services Evaluator testified at the hearing and provided her recommendations. She recommended that the parties should continue in the shared parenting plan with Mother being the residential parent for school purposes and they should continue with the twice a week evening parenting time for Father along with alternating weekends. The evaluator thought Father was a great parent but made her recommendation in light of the distance between the parties and the family support that was present in and around Summit County. With respect to transportation, the evaluator recommended that the parent receiving the children should be responsible for the transportation. When the trial court asked about her recommendation concerning midweek parenting time in light of what she had heard at the hearing thus far, the evaluator indicated that another option would be to have Father have extended weekends when the children did not have school, such as on federal holidays. The evaluator did not interview the children, in part, due to their age, and, in part, because the evaluator did not feel it was necessary for her to reach her decision.

{¶13} At the time of the dissolution, Father lived in Oakdale, Pennsylvania and worked in Pennsylvania. Father is an airplane mechanic for C-130 planes which are used by the military. In 2021, Father moved to Boardman, Ohio, near Youngstown, as it was a halfway point between his work and where the children were. At some point, Father transferred work locations and began working in Vienna, Ohio. Father indicated that he worked from 6:30 am to 3:00 pm Monday through Friday and had all federal holidays off, unless extenuating circumstances required him to

go into work. Father testified that he has looked for jobs closer to where the children are but maintained that taking a job outside of the military base would result in a large pay cut and decrease in benefits. At the time of the hearing, Father made $35.76 per hour. Father stated that, in addition to the required monthly drills that took place one weekend a month, when it was available, Father would participate in additional training at the base to pay down his debts. Paternal grandmother testified that over the two years prior to the hearing she provided Father with over $12,000, which included money for car maintenance, food, clothing for the children, gifts for the children, gas money, and childcare expenses.

{¶14} Around the time of the dissolution, Mother lived in the marital home in Cuyahoga Falls and worked in Youngstown. However, when Mother was able to find a job closer to home she took the opportunity. At the time of the hearing, Mother was working in Canton. Mother works from 7:00 am to 3:30 pm four days a week and one day she works from 10:30 am to 6:30 or 7:00 pm. In addition, Mother works one weekend a month. Mother is an ultrasound technician and earns $32.85 per hour. Mother is responsible for carrying medical, dental, and vision insurance for the children. Mother's boyfriend also lives in the home and helps out with childcare and some expenses.

{¶15} Father testified that he wished to be the residential parent for school purposes and have the children attend school in Boardman. Father asserted that he had located inexpensive childcare and that he would not need any physical or financial help to raise the children. Father maintained that the school near him was better rated, and it was minutes from his house. He also explained that there were sidewalks and lots of children in the neighborhood unlike where Mother lived. In addition, there was a swim club in the summer that the daughter wished to attend. Father did not submit any evidence in support of his claims that his school district was better than the

district the children currently attend. Mother acknowledged that the children have "[p]robably" indicated to her that they would like to spend more time with Father but also expressed concern that Father had a history of telling the children about court proceedings.

{¶16} Father also expressed concern with respect to the health of the children and the amount of time they spent in maternal grandmother's care. Father asserted that both children had been frequently sick with various illnesses, although there was no testimony that any health professional found the children's illnesses out of the ordinary. Father's mother also observed that the children were frequently ill. Father indicated that he and Mother have different parenting styles, with Mother taking more of a watch and wait approach and Father being more proactive about health concerns. Paternal grandmother also knew maternal grandmother, as paternal grandmother would frequently pick up the children from maternal grandmother's home to facilitate Father's parenting time. Maternal grandmother takes the children to school and picks them up. Paternal grandmother indicated that maternal grandmother appeared upset and seemed tired from taking care of the children. Paternal grandmother testified that maternal grandmother provided extensive childcare for the children. Mother testified that her mother lives about 5 minutes away and watches both children before and after school. Maternal grandmother drives the children to school from her house and watches them after school for about 15 to 20 minutes until Mother can pick them up. At the time of the hearing, both children were in school all day, so Mother was no longer utilizing daycare for the children during the school year.

{¶17} Both children went to school in Stow but attended different schools. The children attend Stow schools through open enrollment. The parties' daughter began attending school in Stow while the parties were still married. The daughter initially struggled in school after the dissolution but was described as doing better at the time of the hearing. At the time of the hearing,

she was in fourth grade. Mother testified that the daughter had been diagnosed with ADHD; however, Father did not believe that she had been diagnosed and believed the symptoms she was experiencing were due to stress. Mother testified that the daughter is on a 504B plan in which the school implements the pediatrician's recommendations concerning the daughter's ADHD. These include giving the daughter breaks, taking tests by herself, and sitting at the front of the classroom.

{¶18} The son seemed to be doing well in school and had started kindergarten at the time of the hearing. The son has been diagnosed with asthma; however, Father believes that Mother has not adequately informed the school and daycare providers about the son's condition.

{¶19} Under the shared parenting plan, Father had two midweek evenings of parenting time. Father testified that he provided all the transportation for them. Initially, Father would take the children to paternal grandmother's house in Akron as not many places were open or available due to COVID. However, paternal grandmother moved to Brimfield in 2023 to a smaller residence, making it difficult for Father to exercise his parenting time there. He then began temporarily going to paternal great-grandmother's house for parenting time, which was further away than paternal grandmother's house. Father acknowledged that there was no other family in the Youngstown area and multiple members of extended family in the Summit County area. Nevertheless, Father argued it was more important for Father to see more of the children than for the extended family to see the children. Father maintained that once he started having to do midweek parenting time at paternal great-grandmother's house, it became really difficult to have time to do homework with the children. Father objected to having to spend the majority of his time with the children helping with homework and felt it should be done before he picks them up. Father also felt that he should not be responsible for taking the children to extracurricular activities in Summit County which fall during his parenting time and that he did not sign the children up for.

Mother testified that there have been disputes about the children's homework and that it poses a problem when the daughter would come home and not have finished her homework and it was almost time for bed.

{¶20} Transportation related to parenting time has also been an issue for the parties since the dissolution. For much of the time, Father provided all of the transportation for the weekday evening parenting time. According to Father, a few weeks before the hearing Mother began picking the children up during the week following Father's parenting time. Shortly after that, Father decided that, during the week, Father would pick the children up, drive them back to his home in Boardman, and then require Mother to pick the children up there and take them home. Mother did not agree with this decision and thought it would amount to the children spending a lot of time in the car and not a lot of time actually at Father's residence. Both Father and Mother indicated that they would be accepting of a more even sharing of transportation. Father preferred that they meet halfway all the time, while Mother preferred that the receiving parent do the driving. Mother also indicated that occasionally her boyfriend could help with transportation.

{¶21} Father took issue with having to pay both child support and half of the daycare expenses. He asserted that this went against the intent of the original shared parenting plan which utilized a children's checkbook and required neither side to pay child support. However, months after the original decree, the trial court issued an entry ordering Father to pay child support and eliminating the children's checkbook provision from the shared parenting plan. In 2021, a revised shared parenting plan was adopted by the parties and made an agreed judgment entry of the court. That shared parenting plan named Mother the residential parent for school purposes and included a provision requiring the parties to split the costs of work-related childcare expenses. Father claimed at the hearing that he signed the 2021 shared parenting plan under duress.

**{¶22}** In addition to the testimony, the parties submitted several exhibits, including pay stubs, tax information, and details concerning childcare expenses.

**{¶23}** Father has not demonstrated that the trial court abused its discretion in overruling Father's objections to the magistrate's decision as they related to shared parenting. Father challenges the trial court's decision retaining Mother as the residential parent for school purposes. Father does not appear to contest that a change of circumstances was present. *See* R.C. 3109.04(E)(1)(a). However, Father has not argued or demonstrated that the provisions of R.C. 3109.04(E)(1)(a)(iii) were satisfied. As noted above, R.C. 3109.04(E)(1)(a)(iii) states that "the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and . . . [t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." Here, the children are doing well in Stow Schools. There was testimony that the daughter was initially struggling following the dissolution but has been improving. The daughter's ADHD is also being managed by a 504B plan in the school. Father seems unwilling to acknowledge that the daughter has ADHD and instead attributes her symptoms to stress. Notably, both parents opted to send the daughter to school in Stow while they were still married despite living in Cuyahoga Falls. Further, Father did not submit any evidence to verify his claim that his schools were better than those in Stow. While Father expressed concern about the children's ability to socialize with other children in Mother's area, the children are both in school now and have extracurricular activities available to them. Moreover, the evaluator also recommended Mother remain as the residential parent for school purposes, particularly in light of the distance between Father and Mother and Father and the extended family. Mother's location also provides options for family members, such as maternal grandmother, to provide childcare for the children

before and after school. Overall, Father has not demonstrated that the trial court abused its discretion. Father's third assignment of error is overruled.

{¶24} Father's first and second assignments of error challenge the changes that the trial court made to Father's parenting time.

{¶25} Father challenges the decrease in his midweek parenting time from two evenings a week to one in his first assignment of error. While the text of the assignment of error asserts the location of the midweek parenting time is problematic, no argument relative to that issue is developed within the text of the brief and it will not be further addressed. Father has not demonstrated that the trial court abused its discretion in decreasing Father's midweek parenting time to one evening per week. While it is true that the evaluator recommended continuing with Father's two midweek sessions of parenting time, the evaluator also noted there may be other options such as granting Father parenting time on certain banking holidays, which is what in fact the trial court did. Here, it is apparent that the trial court took to heart the concerns of both parties and the best interests of the children. Both parties raised the issue of the quality of Father's midweek parenting time in light of the distance between the parties. Father expressed frustration with having to help the children with homework during his midweek parenting time as he wanted to be able to engage with them in more enjoyable ways. Mother also expressed concern about the quality of the midweek parenting time in light of Father's recent preference to take the children back to his home for midweek parenting time. It is apparent that the trial court attempted to address these issues by providing Father with three extra days of parenting time, i.e. the federal holidays, which arguably would provide Father with more quality time given that, assuming the children were off school, they could spend the day with him. This is especially so, in light of Father's own testimony that he had federal holidays off from work except under exceptional circumstances.

Father has not demonstrated that the trial court abused its discretion. Father's first assignment of error is overruled.

{¶26} Father asserts in his second assignment of error that the details that the trial court imposed on Father's parenting time on the three federal holidays were unreasonable. Specifically, Father asserts that it was an abuse of discretion for Father to be required to provide all the transportation for the three holidays and the trial court's use of the phrase "after school" is ambiguous and problematic in light of Father's work schedule.

{¶27} The trial court's judgment states as follows: "[Father] shall have the following holidays: . . . Martin Luther King Day, President's Day, and Veterans Day (Veterans Day only – if there is no school, it shall be from 8 a.m. until 7:00 p.m.; if there is school, [Father] shall have from after school until 8:00 p.m. This visit can be held out of Summit county, but [Father] will be responsible for all of the transportation for this Holiday)[.]" Thus, the only holiday of the three that specifically mentions transportation is Veterans Day. A separate provision of the judgment entry indicates that, "[u]nless specifically outlined in this Order, the receiving parent (or an agent of that parent) shall do the transportation." Accordingly, Father is mistaken that the judgment requires Father to provide all the transportation for the three holidays. Moreover, even if that is what the entry provided, we cannot say that Father has demonstrated that the trial court abused its discretion. Father does not generally work on federal holidays and thus transporting the children on those three days and at any specific time on those days should not pose an undue burden. Father has not shown that the trial court abused its discretion. Father's second assignment of error is overruled.

{¶28} Father's first three assignments of error are overruled.

**ASSIGNMENT OF ERROR IV**

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION INCREASING THE APPELLANT/FATHER'S CHILD SUPPORT AND BY FINDING APPELLANT/FATHER IN CONTEMPT FOR NOT PAYING DAYCARE COSTS AND ORDERING HIM TO PAY $3,010.50, INCLUSIVE OF $2,010.50 IN DAYCARE EXPENSES AND $1,000.00 FOR LEGAL FEES.

{¶29} Father asserts in his fourth assignment of error that the trial court abused its discretion in increasing Father's child support and by finding Father in contempt for failing to pay daycare expenses.

{¶30} While Father mentions contempt in the text of this assignment of error, in his brief on this issue, Father has not argued how the trial court abused its discretion in finding him in contempt. Accordingly, Father has not demonstrated that the trial court abused its discretion in finding Father in contempt.

{¶31} "A decision regarding the modification of child support will not be disturbed absent an abuse of discretion by the trial court." (Internal quotations and citations omitted.) *Bettinger v. Bettinger*, 2005-Ohio-5389, ¶ 7 (9th Dist.).

{¶32} On appeal, Father argues that there was not a more than ten percent difference between the prior support order and the current deviated support amount, and thus there was not a substantial change of circumstances. *See* R.C. 3119.79(A). We note that Father did not make this argument in his objections. While Father mentioned the law surrounding substantial changes of circumstance in his objections, he did not argue that the standard was not met. Thus, Father has forfeited this argument and not argued plain error on appeal. *See Herron*, 2021-Ohio-2223, at ¶ 15-16 (9th Dist.). Accordingly, we will not address it. *See id*. at ¶ 16.

{¶33} Father also contends that the trial court abused its discretion in increasing his child support and in failing to deviate the child support downward more than it already did. Father has

not challenged the figures in the child support worksheet or argued that the downward deviations made by the trial court were inappropriate or failed to comply with statutory mandates. The judgment entry set forth that Father's previous child support payment was $917.43 per month for both children and the newly calculated amount was $1,119.45 prior to the deviation. The trial court allotted Father a deviation of $1,754.12, based on Father's testimony that that portion of his pay was from taking additional training and he undertook that training in order to pay off his debts. In addition, the trial court applied the additional statutorily mandated 10% deviation due to the extent of Father's parenting time. The deviated amount was $989.80 per month for both children, which was a slight increase from the prior award.

{¶34} While Father did testify concerning his financial struggles, submitted an affidavit of his income and expenses, and provided evidence that paternal grandmother paid $12,000 of his expenses over the last two years, as mentioned above, Father's financial circumstances were considered in the trial court's calculation of the child support award. The trial court did apply a downward deviation in light of Father's debt and need to pay it down and also applied a downward deviation in light of the extent of Father's parenting time. Further, the trial court deviated Father's cash medical support down to zero. Moreover, it is evident from considering other provisions of the trial court's judgment that the trial court took Father's financial circumstances into consideration. Notably, Father's expenses, at least with respect to daycare, should decrease going forward as both children were in school and the judgment entry provided that the parties would be responsible for paying for their own daycare expenses. Accordingly, Father will no longer be required to pay for half of the daycare expenses that Mother incurs. In addition, the transportation duties will now be more evenly shared between the parties, which should also save Father some money. Finally, the trial court could have disbelieved the extent of Father's financial issues in

light of his claim that, if he was made the residential parent, he would not require any financial support. Considering the totality of the record in light of Father's arguments, we cannot say that Father has shown that the trial court abused its discretion in modifying the child support award as it did.

{¶35} Father's fourth assignment of error is overruled.

III.

{¶36} Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

FLAGG LANZINGER, P. J.
SUTTON, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

SUSAN J. LAX, Attorney at Law, for Appellant.

LESLIE S. GRASKE, Attorney at Law, for Appellee.